Jonathan W. Harris
BAKER & HARRIS
266 West Bridge Street
Blackfoot, Idaho 83221
Telephone: (208) 785-2310
Facsimile: (208) 785-6749
E-Mail: jwharris@bakerharrislaw.com
Idaho State Bar No.6261

## UNITED STATES BANKRUPTCY COURT
### DISTRICT OF IDAHO

| | |
|---|---|
| IN RE:<br><br>**AMBER CHRISTINA FAY JONES,**<br><br>Debtor. | Case No. 24-00339-NGH<br>(Chapter 13)<br><br>**MOTION FOR RELIEF FROM THE AUTOMATIC STAY AND NOTICE**<br><br>Filing Fee: $176.00 |

---

**Notice of Motion for Relief from Automatic Stay and Opportunity to Object and for a Hearing**

<u>No Objection.</u> The Court may consider this request for an order without further notice or hearing unless a party in interest files an Objection within 14 days of the date of this notice. If an objection is not filed withing the time permitted, the Court may consider that there is no opposition to the granting of the requested relief and may grant the relief without further notice of hearing.

<u>Objection.</u> Any objection shall set out the legal and/or factual basis for the objection. A copy of the objection shall be served on the movant.

<u>Hearing on Objection.</u> The objecting party shall also contact the court's calendar clerk to schedule a hearing on the objection and file a separate notice of hearing.

---

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY - 1**

COMES NOW, Creditor Idaho Multifamily, LLC, by and through its attorney of record, Jonathan W. Harris of the law firm of BAKER & HARRIS, and hereby moves that they be grated relief from the automatic stay as to the property described below on the following grounds:

## I. FACTUAL BACKGROUND

1.    Plaintiff, Idaho Multifamily, LLC, hereinafter "Idaho Multifamily" owns property identified as 1525 Hubbard Rd #210, Kuna, ID. Said property consists of an apartment which Plaintiff owns for the purpose of renting out to renters.

2.    Idaho Multifamily entered into a management agreement with Rooftop Real Estate Management, Inc., ("Rooftop") to manage the subject property. Pursuant to the management agreement Rooftop, manages the subject property, including but not limited to, receiving rent payments, monitoring the status of late payments and initiating eviction proceedings when appropriate. Thus, Rooftop has been and is acting as Idaho Multifamily's agent in regards to the subject property.

3.    On April 5, 2024 Rooftop rented the subject property to Amber Christina Fay Jones, hereinafter "Jones" or "Debtor". See lease agreement attached hereto as **Exhibit A**.

4.    Debtor's monthly rental obligation is $1,570. As of May 15, 2024 Debtor was $1,760 delinquent in rent payments.

5.    On May 15, 2024 Rooftop, served a 3 Day Notice on Debtor. Said 3 Day Notice was prepared in accordance with Idaho Code § 6-301 *et. seq*. Said statutes consist of Idaho's unlawful detainer/eviction statutes.[1]

---

[1] The 3 Day Notice was misdated "April 15, 2024" but it was served on May 15, 2024.

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY - 2**

6.     In any case, the 3 Day Notice informed Debtor that she was $1,760 delinquent in rent payments and that if she did not pay said monies within 3 days of the Notice that was served upon her, then eviction proceedings could be brought against her wherein she could be liable for attorney's fees and costs in addition to being ordered to vacate the property.

7.     As of May 24, 2024 Debtor had not brought her rent current, thus, Rooftop initiated eviction proceedings through Jonathan W. Harris of the law firm BAKER & HARRIS. See Eviction Complaint attached hereto as **Exhibit B**.

8.     Pursuant to the filing of the Complaint, the Magistrate Court in Ada County scheduled the Eviction Hearing to be held on June 18, 2024 at 8:30 a.m. See Another Summons for Eviction attached hereto as **Exhibit C**.

9.     On June 3, 2024, Debtor filed her chapter 13 bankruptcy case.

10.    On June 11, 2024 Mr. Harris filed a notice of bankruptcy with the Magistrate Court in Ada County to stay the eviction proceeding.

11.    In her chapter 13 Petition Debtor indicates that she desires to assume the lease agreement.

12.    Debtor has not paid any rent post petition nor has she made any arrangements to pay rent. Thus, Debtor has done nothing to actually assume the lease agreement, but rather has continued ignore her obligations in that regard.

13.    As the date of this motion Debtor owes $2,104.67 in pre-petition rent.[2]

---

[2]The June 2024 rent is prorated with 2 days going to pre-petition rent and the balance of the month of June going to post petition rent.

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY - 3**

14.     As the date of this motion Debtor owes $4,915.33 in pre-petition rent. See account

statement prepared by Rooftop reflecting amounts owed by Debtor attached hereto as

**Exhibit D.**

## II. LEGAL ARGUMENT

15.     Pursuant to 11 U.S.C. § 362(a)3 the automatic stay pertains to:

> Any act to obtain possession of property of the estate or of property
> from the estate or to exercise control over property of the estate.

Therefore Rooftop cannot proceed with the eviction without relief from the automatic
stay.

16.     11 U.S.C. § 362(d)(1) provides:

On request of a party in interest and after notice and a hearing, the court shall grant relief
from the stay provided under subsection (a) of this section, such as by terminating,
annulling, modifying, or conditioning such stay—

> (1)for cause, including the lack of adequate protection of an interest in property of
> such party in interest;

17.     Clearly Rooftop is entitled to relief from the automatic stay for "cause" and that Rooftop

not have "adequate protection" as far as accrual of post petition rent.

18.     Debtor has failed to pay any post petition rent, thus her request to assume the lease

agreement should be rejected and the automatic stay should be lifted to allow Rooftop to

proceed with the eviction.

19.     Therefore, relief from the automatic stay should be granted allowing Rooftop to proceed

with the eviction because Rooftop has no protection in terms of ever being able to collect

post petition rent and Debtor has not brought the rent current or otherwise made any

effort to pay post petition rent.


**MOTION FOR RELIEF FROM THE AUTOMATIC STAY - 4**

20.    Notice pursuant to Rule 4001.2 of the Local Bankruptcy Rules and subject to Federal

Bankruptcy Rules of Procedure 9006, any Party in interest opposing this motion must file

and serve an objection thereto not later than 17 days after the date of service of the

motion. The objection shall specifically identify those matter contained in the motion that

are at issue in any other basis or opposition to the motion. Absent the filing of a timely

objection, the Court may grant the relief sought without a hearing. As set forth in Rule

4001.2(d)3, if an objection is filed to this relief motion, the objection must be served

upon the movant and upon all Parties receiving the motion. In a accordance with Rule

4001.2(e)1, a Party opposing a motion shall contact the Court's calendaring clerk to

schedule a preliminary hearing. At the time of filing the objection to a motion, the

objecting party shall file and serve a notice of such hearing.

### III. <u>CONCLUSION AND PRAYER FOR RELIEF FROM STAY</u>

21.    Wherefore, in accordance with Local Bankruptcy Rule 4001.2(b)(1) and 11 U.S.C. §

362(d)(1) Rooftop requests that its Motion for Relief from Automatic Stay be granted and

the Court issue an order 1) lifting the automatic stay to permit Rooftop to proceed with

the eviction proceeding under state law; and 2) granting such further relief as this Court

deems just and proper under the circumstances.

22.    FURTHER, Rooftop requests that the 14-day stay imposed by F.R.B.P. 4001(a)(3) be

waived, and he be allowed to settle the claim immediately following the order relieving

him from the stay.

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY - 5**

## <u>RULE 4001.2(g) NOTICE</u>

YOU ARE HEREBY NOTIFIED, pursuant to Rule 4001.2(g) of the Local Bankruptcy Rules ("LBR") that:

Local Bankruptcy Rule 4001.2 (c) requires that any party in interest opposing this motion <u>must file and serve an objection thereto not later than seventeen (17) days after the date of service of the motion</u>. The objection must specifically identify those matters contained in the motin that are at issue and any other basis for opposition to the motion. The objection shall also contain the notice of hearing required by subsection (e)(1) and the proff of service required by subsection (h). Absent the filing of a temiely objection, the Court may grant the relief sought without hearing.

Local Bankruptcy Rule 4001.2(d)(3) provides that if an objection is filed to a motion for stay relief, the objection shall be served upon the movant and upon all parties receiving service of this motion. Proof of service of any objection shall be made in accordance with Local Bankruptcy Rule 4001.2(h).

Local Bankruptcy Rule 4001.2(e)(1) requires a party opposing this motion to contact the Court's calendar clerk to schedule a preliminary hearing. The objection to a motion shall include the notice of such hearing. Upon Court approval, the movant may schedule a hearing for cause shown in the motion or other submissions.

Notice is hereby further give, pursuant to Local Bankruptcy Rule 4001.2, that 11 U.S.C. § 362(e) reads as follows:

(1) Thirty days after a request under subsection (d) of this section for relief from the stay of any act against property of the estate under subsection (a) of this section, such stay is terminated with respect to the party in interest making such request, unless the court, after notice and a hearing, orders such stay continued in effect pending the conclusion of, or as a result of, a final hearing and determination under subsection (d) of this section. A hearing under this subsection

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY - 6**

may be a preliminary hearing, or may be consolidated with the final hearing under subsection (d) of this section. The court shall order such stay continued in effect pending the conclusion of the final hearing under subsection (d) of this section if there is a reasonable likelihood that the party opposing relief from such stay will prevail at the conclusion of such final hearing. If the hearing under this subsection is a preliminary hearing, then such final hearing shall be concluded not later than thirty days after the conclusion of such preliminary hearing, unless the 30-day period is extended with the consent of the parties in interest or for a specific time which the court finds is required by compelling circumstances.

**(2)** Notwithstanding paragraph (1), in a case under chapter 7, 11, or 13 in which the debtor is an individual, the stay under subsection (a) shall terminate on the date that is 60 days after a request is made by a party in interest under subsection (d), unless-

> **(A)** a final decision is rendered by the court during the 60-day period beginning on the date of the request; or
> **(B)** such 60-day period is extended-
> **(i)** by agreement of all parties in interest; or
> **(ii)** by the court for such specific period of time as the court finds is required for good cause, as described in findings made by the court.

DATED this _____ day of August, 2024.

BAKER & HARRIS

Jonathan W. Harris

CERTIFICATE OF SERVICE

I hereby certify that the foregoing **MOTION FOR RELIEF FROM THE AUTOMATIC STAY** was electronically filed with the Clerk of the Court using the CM/ECF system which sent a Notice of Electronic filing to the following registered CM/ECF participants:

- Kathleen McCallister kam@kam13trustee.com
- Holly Sutherland Holly@averylaw.net
- US Trustee ustp.region18.bs.ecf@usdoj.gov

Jonathan W. Harris

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY - 7**



r o o f t o p
r e a l   e s t a t e
m a n a g e m e n t

# Lease Agreement

## Office ~ 208-522-ROOF Address ~3456 E 17th St. Suite 210 Idaho Falls, ID 83406

THIS AGREEMENT made this 5th day of April, 2024 by Owner, and Rooftop Real Estate Management here called "Management Company" and Amber Jones herein called "Tenant." This agreement shall be governed and interpreted pursuant to the laws of the State of Idaho.

1. **TERM**

   Management Company hereby agrees to rent to tenant real property located at 1525 Hubbard Rd Unit 201, Kuna ID 83634 commencing on the 19th day of April, 2024, and monthly thereafter until the 30th day of April, 2025. The lease shall continue on a month-to-month basis thereafter, requiring a 30 day written notice to terminate the lease. Management Company rents the property to Tenant on the following terms and conditions.

2. **OCCUPANTS**

   Tenant agrees that the property shall be occupied by no more than 2 persons, consisting of 1 adult and 1 children without the written consent of the Management Company. List all adults and minors:

   Amber and Jesse

   The presence of an individual residing in the premises that is not listed on the lease agreement will be sufficient grounds for the termination of the lease agreement.

3. **RENT**

   Tenant agrees to pay Management Company as base rent the sum of $1495.00 per month, due and payable monthly in advance on the 1 day of each month during the term of this agreement. If Tenant chooses to occupy the property early, a pro-rate of $628.00 will be added to the first month's rent. At the end of the lease term, the monthly rent amount will raise $50 for leases on a month-to-month basis.

   [X] There is an additional charge of $75.00 for Water, sewer, garbage that should be included with the monthly rent making the total due $1570.00 each month.

4. **PAYMENT OF RENT**

   Rent shall be made payable to Rooftop Real Estate Management and be mailed or hand delivered to 3456 E 17th St. Suite 210 Idaho Falls, ID. 83406. Rent can also be paid online via bank draft or credit card. If mailed, payments should be postmarked on or before the agreed upon due date. Payments are due on the first of every month.

5. **LATE CHARGE**

   If Management Company has not received rent by 5 p.m. on the 5th day after rent is due, a fifty dollar ($50.00) late fee will be charged and will continue to accrue at a rate of ten dollars ($10.00) for each subsequent day the rent is not received. It is the sole responsibility of the tenant to ensure their rent was received by Management Company. Neither ill health, loss of job, financial emergency, nor any other excuse will be accepted. Any rents lost in the mail or otherwise will be treated as unpaid until received by the Management Company. If the rent has not been received by 5 p.m. on the 5th day after rent is due, late



EXHIBIT
A

charges will begin to accrue. If full payment is not received by 5:00 p.m. the 10th day after rent is due, a 3-day eviction notice will be enforced.

## 6. BAD CHECKS

If Tenant's payment is returned unpaid for any reason, Tenant agrees to pay a penalty of fifty dollars ($50.00) and all future payments must be made in cash or money order. Late charges will be assessed as appropriate from the date rent was originally due.

## 7. SECURITY DEPOSIT

Tenant hereby agrees to pay a security damage deposit in the amount of $2800.00. This deposit will be held intact by Management Company and returned within thirty (30) days after Tenant has vacated the property if:

• Lease term has been fulfilled;
• All monies due Management Company by Tenant has been paid;
• Property is not damaged and is left in its original condition;
• The White Glove Checklist (will be sent to you when notice is given) has been completed. An inspection of the property will be done upon the tenant moving out and property is expected to be tenant-ready. Anything not done by the tenant will be done by the Management Company at a rate of $50 per hour and will be deducted from the returned deposit. $200.00 is non-refundable for carpet cleaning and will be held from the deposit. Should the tenant not receive the White Glove Checklist, it is the sole responsibility of the tenant to notify Management Company.
• The Tenant has left the Management Company with accurate forwarding contact information.
Deposit may not be returned if Tenant leaves before lease is completed, at the discretion of the Management Company. Deposit may be applied by Management Company to satisfy all or part of Tenant's obligations. Management Company may claim damages in excess of deposit. Tenant may not apply the deposit to any of the rent payment.

## 8. NOTICE OF TERMINATION

Tenant is required to give a written thirty (30) day notice prior to termination of occupancy in every case. At the time notice is received Tenant is then financially responsible for the next thirty days, regardless of when the property is vacated. It is the sole responsibility of the Tenant to ensure the notice is received by Management Company. Management Company will send acknowledgement of the notice within one week of it being received. It is also the sole responsibility of the Tenant to notify Management Company if they do not receive an acknowledgement of their notice to vacate. Written notice should be mailed or hand-delivered to 3456 E. 17th #210 Ammon, ID 83406 or email to boisearea@rooftoprealestate.net.

## 9. EARLY TERMINATION

If Tenant breaks this lease before completion of the term, Tenant is subject to a lease re-writing fee of $250, and will continue paying rent until a new tenant is found. Tenant acknowledges that defaulting on this lease could result in a judgment and lien against his/her future assets and/or earnings.

## 10. ABANDONMENT

If Tenant leaves the premises unoccupied for fifteen (15) days without payment in advance for that month, Management Company may remove Tenant's property and bar the Tenant from returning.

## 11. NONASSIGNMENT

Tenant shall not assign this agreement, nor sub-let any part of the property without written permission from Management Company.

## 12. APPLIANCES

The property is rented with [x] oven/range, [x] refrigerator, [x] dishwasher, [ ] washer, [ ] dryer, [x] microwave, [ ] water softener, [x] central air conditioner, [ ] central vacuum system (hoses, attachments, and vacuum heads), [ ] garage door opener, n/a garage door transmitters, [ ] lawnmower.

## 13. REMOVAL OF OWNER'S PROPERTY

Tenant shall not remove any property belonging to Owner without the express written consent of Management Company.

## 14. ALTERATIONS AND IMPROVEMENTS

Tenant shall make no alterations to the building or construct any building or make other improvements without the prior written consent of Management Company. Tenant will be responsible for financial obligations regarding any improvements or repairs done by tenant without written authorization to make the repairs in advance. Tenant is responsible for any damage caused in making repairs themselves. All alterations, changes, and improvements built, constructed, or placed on or around the property by Tenant, with the exception of fixtures properly removable without damage to the property, shall, unless otherwise provided

by written agreement between Management Company and Tenant, be the property of the Management Company and remain at the expiration or earlier termination of the Lease Agreement.

15. **DAMAGE TO PREMISES**

If the property, or any part of the property, shall be partially damaged by fire or other casualty not due to Tenant's negligence or willful act, or that of the Tenant's family, agent or visitor, there shall be an abatement of rent corresponding with the time during which, and the extent to which, the property is unlivable. If Landlord shall decide not to rebuild or repair, the term of the lease shall end and the rent shall be prorated up to the time of the damage. Tenant is responsible, financially and otherwise for any damage that occurs as a result of Tenant's negligence, misuse, waste, or neglect.

16. **DANGEROUS MATERIALS**

Tenant shall not keep or have on or around the property any article or thing of a dangerous, inflammable, or explosive character that might unreasonably increase the danger of fire on or around the property that might be considered hazardous.

17. **ANIMALS**

[ ] Tenant shall keep no domestic or other animals in or about the property.

[X] Management Company agrees to the following animals on the premises: ESA cat for an additional pet deposit of n/a. Pet deposit is nonrefundable. Monthly rent will increase by $30 per month. The presence of additional and/or different animals on the premises without written permission is a violation of the lease and will result in immediate eviction. Tenant acknowledges that Management Company may claim damages in excess of deposit. Tenant agrees to comply with all HOA rules, including those regarding pets. When outside pets must always be on a leash or otherwise contained. Tenant also agrees to pick up after the pet/s when outside. If evidence of a pet is found around the property the tenant will be charged a clean-up fee of $50/hour.

18. **SURRENDER OF PREMISES**

At the expiration the of the Lease Agreement, Tenant shall quit and surrender the property in as good a condition as it was at the commencement of the Lease Agreement. At the beginning of the lease you will receive a Property Condition Report to complete and return to Management Company. If the Property Condition Report is not received by the management company within one month of the move in date, it will be assumed that property was in perfect condition at the commencement of the lease. It is the sole duty of the tenant to ensure that they are protected by using this report.

19. **SMOKING**

This residence is non-smoking. ANY smoking inside the unit will be grounds for eviction.

20. **HOLDOVER BY TENANT**

Should Tenant remain in possession of the property with the consent of Management Company after the expiration of the Term of this Lease Agreement, a new tenancy from month to month shall be created at the Management Company's discretion or a new Lease Agreement shall be negotiated within thirty (30) days of Lease Agreement Expiration.

21. **TENANT INSURANCE**

Tenant is advised the owner does carry insurance on the building, but not on the Tenant's personal property. Tenant is required to purchase renter's insurance at their own expense sufficient to protect their contents against fire, flood, theft, breakages, etc. Tenant is also advised that owner's insurance may not cover damages caused by Tenant or Tenant's property.

22. **ACCESS TO PREMISES**

Management Company reserves the right to enter the property at reasonable times to inspect, repair, or show the property to prospective tenants. A twenty-four (24) hour notice will be given when possible. If unlawful conduct is suspected, or there is probable cause, Management Company reserves the right to enter the property without notice. Tenant is responsible for keeping Management Company apprised of their current contact information, so that notice will be able to be given.

23. **PEST CONTROL POLICY**

Tenant is responsible for any pest control service, if Tenant desires such a service. Owner is not responsible for any damage done to the Tenant's person or property by such pests, or to the person or property of Tenant's family of any other persons on their premises.

24. **RESPONSIBLE TENANT**

• Good housekeeping is expected. Tenant agrees to keep quarters clean in a sanitary condition. Tenant agrees not to permit any deterioration or destruction to occur while they are occupying the property. Tenant shall keep the fixtures in the property in good order and repair; keep the furnace clean; keep the walks free from dirt and debris. Tenant shall, at Tenant's sole expense, make all required repairs to the plumbing, range, oven heating apparatus, electric and gas fixtures, other mechanical devices and systems, floors, ceilings and walls whenever damage to such items shall have resulted from Tenant's misuse,

waste, neglect, or that of Tenant's family, agent, or visitor.

• Residence shall be used so as to comply with state, county, and municipal laws and ordinances. Tenant shall not use residence or permit it to be used for any disorderly or unlawful purpose or in any manner so as to interfere with other resident's quiet enjoyment.

• Tenant agrees to promptly notify Management Company in the event of any damage, defect, or destruction of the property, or the failure of any of the appliances or mechanical systems, and except for repairs and replacements that are the obligation of the Tenant pursuant to this Lease Agreement, Management Company shall use its best efforts to repair or replace such damaged or defective area, appliance or mechanical system.

## 25. MOLD AND MILDEW

Due to the arid environment in Southeastern, Idaho, we do not experience mold and mildew problems at the same level as communities with higher humidity. Nonetheless, mold and mildew problems can occur if property is not properly maintained. There is conflicting scientific evidence as to the amount of mold and mildew that can lead to adverse health consequences. Thus, appropriate precautions should be taken to minimize mold and mildew accumulation. Accordingly, by signing this Lease Agreement, Tenant acknowledges and agrees to the following terms and conditions.

• Ventilation: During and after baths, showers, cooking and other activities where steam or moist air is produced, the room where the activity is occurring should be ventilated with fans and/or opening the windows to allow moist air to escape and prevent build up of mold or mildew on surfaces inside the dwelling.

• Cleaning: As set forth above in section 24, Tenant will clean the property at regular intervals using customary cleaning products and practices. Said cleaning, in combination with taking reasonable measures outlined above to ventilate air where steam or moist air is produced, will prevent the build up of mold or mildew in any degree that would be harmful to human health or cause damage to the property.

• Moisture Intrusion into non-ventilated areas: Of greatest concern as it pertains to buildup of mold or mildew within the property which is the subject of this rental agreement, consist of circumstances where moisture has the potential to intrude into non-ventilated areas. Non-ventilated areas include, but are not limited to, inside walls, ceilings, floors, roof and attic. Moisture intrusion inside these areas if not promptly discovered and remediated can lead to an unhealthy environment and can result in significant damage to the subject property.

Therefore, Tenant assumes the responsibility to use reasonable care and caution with respect to all circumstances and activities where moisture could intrude into non-ventilated areas. This includes, but is not limited to, all activities where inside or outside plumbing apparatus is used and all circumstances of outside precipitation, including rain and the melting of snow and/or ice. In this regard, tenant will use reasonable care and caution to ensure that moisture does not intrude into non-ventilated areas. If Tenant knows, or though the exercise of reasonable care and caution, should know that moisture has intruded into non-ventilated areas Tenant will immediately report the same to Management Company. In addition, Tenant will notify Management Company of any holes or breaks in walls, ceilings, floors, roof or attic, whether said holes or breaks were caused by Tenant or occurred from other causes.

• If Tenant has any reason to suspect the mold or mildew is accumulating anywhere in the subject property, including all ventilated areas and all non-ventilated areas, Tenant has a duty to promptly report the same to the Management Company.

• Tenant agrees to be responsible for any damage to Tenant's property or Tenant's health resulting from Tenant's failure to abide by the terms of this Lease Agreement. Additionally, Tenant will defend and indemnify Management Company and the owner of the subject property from and against all claims brought as a result of Tenant or Tenant's property sustaining damage due to exposure to mold or mildew.

• For purposes of this section 25 of this Lease Agreement, "Tenant" refers to all persons authorized to reside in the subject property under this Lease Agreement and to all persons who are otherwise living in the subject property with Tenant's permission.

## 26. WAIVER

Failure of Management Company to exercise any rights shall not act as a waiver of those rights. For example, failure of Management Company to collect a late-rent charge on one occasion will not preclude collecting it on another.

## 27. ADDITIONAL RULES AND REGULATIONS

• Tenant and guests shall not be noisy, disorderly, boisterous or unlawful, and shall not create nuisance or clutter or disturb the rights, comforts, or convenience or neighboring residents. Tenant shall be liable for damages caused by Tenant or guests.

• All radios, televisions, stereos, etc. must be turned down to a level of sound that does not annoy or interfere with neighboring

residents.

• Tenant is prohibited from adding locks, changing, or in any way altering locks installed on the doors. All keys must be returned to Management Company upon termination of the lease.

• Non-operating vehicles are not permitted on the premises. Unless stated otherwise in writing, tenants are permitted no more than two vehicles (guest or otherwise) on the premises.

• Garbage shall be disposed of properly.

• A fee will be charged for re-keying a lock at Tenant's request.

• A ten dollar ($10.00) fee will be charged for opening a door for a lock-out Tenant during business hours. After hours the charge will be twenty-five ($25.00) dollars.

• Tenant shall not alter the grounds or yard.

• Management Company may make reasonable changes to these rules if necessary.

• Tenant agrees to abide by all Homeowners Association rules and by-laws where applicable. A copy can be provided at Tenant request. Any fines that accrue as a result of Tenant's failure to comply with HOA rules and by-laws will be the financial responsibility of tenant. Management Company will inform Tenant of fines, and Tenant is responsible to pay those with the next month's rent. If for any reason the tenant does not remit payment for fines, Management Company reserves the right to subtract any fines owed from the Tenant's security deposit and a ten dollar ($10.00) fee charged.

All furnace filters need to be changed at tenant's expense every 3 months. Any damage incurred to the heating/cooling system by not adhering to this filter replacement schedule will be repaired at the sole expense of the tenant.

• Smoke detector batteries should be replaced as necessary at the cost of the tenant. Tenant is responsible to keep smoke detectors functioning properly and should notify Management Company of any problems.

28. **SECURITY**

Tenant acknowledges that Management Company does not provide a security alarm system or any security for the property or Tenant and that any such alarm system or security service, if acquired by Tenant, is not represented or warranted to be complete in all respects or to protect Tenant from all harm. Tenant hereby releases Management Company from any loss, suit, claim, charge, damage or injury resulting from lack of security or failure of security.

29. **UTILITIES AND PROPERTY CARE**

Tenant shall be responsible for arranging and paying for utility services on the property. The following utilities are included with the base rent: [ ] power, [ ] gas, [ ] water, [ ] garbage, [ ] sewer. Tenant shall agree to maintain operation of utilities during occupancy. A $25 fee will be charged for each utility bill received by Management Company for service dates occupied by the tenant.

The tenant shall be responsible for: [ ] lawn care, [ ] snow removal. If these items are not taken care of acceptably, as decided by the Management Company, the service will be hired out and billed to the tenant. Tenant Shall be responsible for arranging and paying for satellite, cable and/or internet. If satellite service of any kind is required tenant must use [ ] Merlin's TV. No other company/entity is allowed to install, attach to, or provide any satellite service without written consent.

30. **FULL DISCLOSURE**

Tenant signing this Lease Agreement hereby states that all questions about this Lease Agreement have been answered, that they fully understand all the provisions of the agreement and the obligations and responsibilities of each part, as spelled out herein. They further state that they agree to fulfill their obligations in every respect or suffer the full legal and financial consequences of their actions or lack of action in violation of this agreement. Tenant agrees that, in the event that any provision of this Agreement shall be declared null and void, invalid, or held for any reason to be unenforceable by a court of competent jurisdiction the remainder of such Agreement shall nevertheless remain in full force and effect. Signature by Tenant on this Lease Agreement is acknowledgement and he/she has received a signed copy of the Lease Agreement. The foregoing constitutes the entire agreement between the parties and may be modified only by a writing signed by both parties.

*Drea Roman*          04 / 11 / 2024          *Amber Jones*          04 / 05 / 2024

# White Glove Checklist

## Living Room

- All items removed from the walls and filled in with putty (do not over apply) and call the office (208-522-7663) to information on matching paint.
- Carpets vacuumed including the edges
- Light switches, covers & outlets cleaned
- Window sill & tracks cleaned out
- Windows cleaned
- Window blinds vacuumed and wiped off
- Front door wiped down, any sticky substances removed from front and back
- Walls and plant shelves cleaned
- Light fixtures wiped down, cleaned and burned out bulbs replaced
- Trim wiped down and cleaned
- Change Furnace filter
- Clean all the vents in the room

## Bedrooms

- All items removed from the walls and filled in with putty and painted with correct color paint.
- Carpets vacuumed, including edges
- Light switches, covers & outlets cleaned
- Window sill & tracks cleaned out
- Windows cleaned
- Window blinds vacuumed and wiped off
- Walls cleaned
- Doors dusted and wiped down
- Dust and wipe down closet shelves
- Light Fixtures wiped down and cleaned
- Trim wiped down and cleaned
- Clean all the vents in the room

## Laundry Room

- All items removed from the walls and filled in with putty and painted with correct color paint.
- Floor swept & mopped and all edges cleaned
- Light switches, covers & outlets cleaned
- Washer wiped down and cleaned inside & out
- Dryer wiped down inside & out
- Shelf wiped down and dusted
- Walls cleaned
- Door dusted and wiped down
- Wipe down vacuum container and replace vacuum bag (can be purchased at model home)
- Wipe down all central vacuum parts, hoses, and attachments.
- Change Furnace Filter in Utility Room.
- Clean all the vents in the room and fan cover
- Clean Drip pan under water heater

# Kitchen

- All items removed from the walls and filled in with putty and painted with correct color paint.
- All food removed from fridge, freezer, and cupboards
- Light switches, covers & outlets cleaned
- Window sill & tracks cleaned out
- Windows cleaned
- Window blinds vacuumed and wiped off
- Walls cleaned
- Cabinet fronts, tops & insides washed down
- Disposal flushed out (pour a little bleach or lemon juice for freshness)
- Dishwasher runs through a cycle without dishes to remove excess food. Outside wiped down.
- Drawers washed inside and out
- Fan above the stove dusted and fan cover washed
- Freezer defrosted and wiped down. Do not use any sharp tools to remove ice.
- Fridge racks, drawers, behind drawers, shelves & all compartments cleaned.(Leave ON)
- Vacuum and wipe down above the kitchen cabinets and remove all décor.
- Gently pull the fridge out and clean underneath and behind. Clean fridge as well.
- Stove burners and underneath (top lifts up) washed and cleaned out.
- Broiler drawer under oven cleaned out.
- Floor beneath the stove swept and mopped
- Microwave cleaned inside and out
- Outside of stove and stove top cleaned to shiny. (Replace drip pans if not shiny)
- Oven cleaned. Wipe the inside out until inside is shiny and all burnt food is removed
- Entire floor should be swept and mopped, trim should be cleaned
- Counter tops and edges scrubbed & cleaned
- Light fixtures wiped down and cleaned
- Trim wiped down and cleaned
- Clean all the vents in the room

# Bathrooms

- All items removed from the walls and filled in with putty and painted with correct color paint
- Floor swept & mopped and all edges cleaned
- Light switches, covers & outlets cleaned
- Shower scrubbed so there is no soap scum or hard water spots
- Shower fixtures polished
- Mirrors cleaned
- Walls cleaned
- Door dusted and wiped down
- Sinks, edges, & fixtures cleaned & polished
- All cabinets cleaned inside and out
- Towel racks cleaned and polished
- Light Fixtures wiped down and cleaned
- Inside toilet bowl cleaned to remove any rings and build up
- Toilet lid, under seat and around base cleaned
- Counter tops and edges scrubbed & cleaned
- Trim wiped down and cleaned
- Clean all the vents in the room

## Garage

- Clean door going into the garage (the standard 8 ft. door)
- Clean out all items & garbage
- Sweep out entire garage

*A.J.*

# Signature Certificate

Reference number: HHD7W-6GTJ5-9RFWL-VYD3L

| Signer | Timestamp | Signature |
|---|---|---|

**Amber Jones**
Email: aj.jones7979@gmail.com

| | | |
|---|---|---|
| Sent: | 05 Apr 2024 18:07:11 UTC | |
| Viewed: | 05 Apr 2024 19:11:45 UTC | |
| Signed: | 05 Apr 2024 19:12:30 UTC | |

**Recipient Verification:**

✔Email verified    05 Apr 2024 19:11:45 UTC

*Amber Jones*

IP address: 24.245.196.113
Location: Meridian, United States

---

**Drea Roman**
Email: boisearea@rooftoprentals.net
Signed in person

| | |
|---|---|
| Sent: | 05 Apr 2024 18:07:11 UTC |
| Signed: | 11 Apr 2024 19:59:00 UTC |

*Drea Roman*

IP address: 67.61.45.28
Location: Meridian, United States

Document completed by all parties on:
11 Apr 2024 19:59:00 UTC

Page 1 of 1



**Signed with PandaDoc**

PandaDoc is a document workflow and certified eSignature
solution trusted by 50,000+ companies worldwide.



Jonathan W. Harris
BAKER & HARRIS
266 West Bridge Street
Blackfoot, Idaho 83221
Telephone: (208) 785-2310
Facsimile: (208) 785-6749
E-Mail: jwharris@bakerharrislaw.com
Court eService Email: efiling@bakerharrislaw.com
Idaho State Bar No. 6261

Attorneys for Plaintiffs

IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE
STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

IDAHO MULTIFAMILY, LLC,

             Plaintiffs,

    v.

AMBER JONES,

             Defendants.

Case No.

**VERIFIED COMPLAINT**

Fee Category: A.12.
Filing Fee: $166

COME NOW the Plaintiff and for cause of action allege:

1.    Plaintiff is now and has been at all material times herein the owner of real property located at 1525 Hubbard Rd, #201, Kuna, County of Ada, State of Idaho, which is a parcel of land less than five (5) acres.

2.    The Defendants is now in possession of the premises.

3.    The Defendants has entered upon the premises, holds the premises, is in default of the payment of rent and is in an unlawful detainer thereon.

4.    That a proper 3-day notice terminating Defendant's tenancy for non-payment of rent was served upon Defendants on May 15, 2024. A true and correct copy of the 3-day notice is attached hereto as Exhibit A.

**VERIFIED COMPLAINT- 1**



5.      That Chandler Daw d/b/a Rooftop Real Estate Management, is Plaintiffs' authorized agent

to manage the real property at issue in this litigation.

6.      That Plaintiffs are now entitled to possession of the premises.

WHEREFORE, Plaintiff pray for relief provided by Idaho Code § 6-310, unlawful detainer,

as follows:

1.      For scheduling of a trial within twelve (12) days of filing the complaint.

2.      For judgment against the Defendant for costs and expenses including a reasonable attorney's

fee of $600.00 if the Defendant should default.

3.      For restitution of the premises.

4.      For such other and further relief as to the court may deem proper.

DATED this _28th_ day of May, 2024.

BAKER & HARRIS

Jonathan W. Harris

**VERIFIED COMPLAINT- 2**

<u>VERIFICATION</u>

Chandler Daw, deposes and says:

That he is authorized by Plaintiff to manage the real property at issue in the above-entitled matter; that he has read the foregoing Complaint, knows the contents thereof and that he declares under penalty of perjury pursuant to the law of the State of Idaho, that the foregoing is true and correct.

DATED this 24ᵗʰ May, 2024.

_____
Chandler Daw

**VERIFIED COMPLAINT- 3**

3 Day Notice

To:   Amber Jones
      1525 Hubbard Road #201
      Kuna, Idaho 83642

Pursuant to Idaho Code § 6-303(2) YOU ARE HEREBY NOTIFIED AND
REQUIRED to surrender possession of the premises to the owners within
three (3) days of the date of service of this notice upon you, or to pay the rent
now due and owing by you to Rooftop Real Estate Management in the amount
of $1760.00 for the rental of a building now occupied by you and located at
1525 Hubbard Road #201.

   YOU ARE FURTHER NOTIFIED that in the event of your failure to pay the
rent or to surrender possession of the premises within three (3) days from the
date of service of this notice upon you, the owners will, pursuant to Idaho
Code § 6-317, bring a suit against you for three times their damages, including
recovery of possession, rent, and for all costs, including attorney's fees
pursuant to Idaho Code §6-324, incurred in bringing suit.

   If the Court enters judgment against you, you will have seventy-two (72)
hours, or longer if granted by the Court to remove your belongings from the
premises before the landlord may remove and dispose of such property
pursuant to § 6-316, Idaho Code.

Dated this April 15, 2024

By:_____



Filed: 06/04/2024 10:33:12
Fourth Judicial District, Ada County
**Trent Tripple, Clerk of the Court**
By: Deputy Clerk - Ortega Gomez, Alondra

Jonathan W. Harris
BAKER & HARRIS
266 West Bridge Street
Blackfoot, Idaho 83221
Telephone: (208) 785-2310
Facsimile: (208) 785-6749
E-Mail: jwharris@bakerharrislaw.com
Court eService Email: efiling@bakerharrislaw.com      **Matthew Haynes**
Idaho State Bar No. 6261

Attorneys for Plaintiff

### IN THE DISTRICT COURT OF THE FOURTH JUDICIAL DISTRICT OF THE STATE OF IDAHO, IN AND FOR THE COUNTY OF ADA

IDAHO MULTIFAMILY, LLC,

                Plaintiffs,

   v.

AMBER JONES,

                Defendant.

Case No.  CV01-24-09040

**ANOTHER SUMMONS FOR EVICTION PURSUANT TO IDAHO CODE § 6-310**
(Expedited Proceedings)

**TO:   THE ABOVE NAMED DEFENDANT: AMBER JONES**
**YOU HAVE BEEN SUED BY THE ABOVE NAMED PLAINTIFF: IDAHO MULTIFAMILY, LLC**

    A trial will be held on __Tuesday__ the 18th day of __June__, 2024 at __8__ : 30 a.m., at

the Ada County Courthouse located at 200 W Front St, Boise, ID 83702, (208)287-6900, to

determine if you should be evicted from the premises described in the Complaint which is served

with the Summons. If the Court grants the request to evict you, it may also order you to pay costs

of this proceeding. If you wish to seek the advice of or representation by an attorney in this matter,

you should do so promptly, to allow adequate time for trial preparation.

**ANOTHER SUMMONS FOR EVICTION - 1**



This Summons and the Complaint shall be served upon the Defendant not less than five (5) days prior to the date of the hearing.

DATED this _____6/4/2024 10:36:59 AM_____.

**Trent Tripple**
_____
CLERK OF THE COURT

By: _____
Deputy Clerk

**ANOTHER SUMMONS FOR EVICTION - 2**



**\*Hubbard, 1525 Hubbard-RV**
3456 E. 17th St.  Suite 210
Ammon, ID  83406

Phone: (208) 522-7663

**A148**

## Lease Statement

Page 1 of 3

8/1/2024 09:49

Release 10.03

### Statement for \*Hubbard, 1525 Hubbard-RV - 201 - Jones, Amber

Amber Jones
5868 n garrett st
Garden city, ID 83714

**List of Residents**

Jones, Amber

| | |
|---|---|
| Amount Due | $7,020.00 |
| End Date | 4/30/2025 |
| Type | Monthly |
| Day Due | 1st of month |
| Currently Paid Thru | 4/30/2024 |

**Late Fee Terms**

Rent due on 1st.  Late fees are charged starting 5 days after the due date.  Late Fee is $50.00. Late Fee each additional day is $10.00.

**Physical Address**  1525 Hubbard 201
Kuna, ID  83642

Account Id  5720

*All transactions*

| Date | Ref | Transaction Name | Payee | Transaction Comments | Charges | Payments | Balance |
|---|---|---|---|---|---|---|---|
| | | Opening Balance | | | | | $0.00 |
| 3/14/2024 | C20240314 | EFT Tenant Payment | Jones, Amber | Application Web Payment using Primary | | ($25.00) | ($25.00) |
| 3/14/2024 | | Application Fee | Jones, Amber | | $25.00 | | $0.00 |
| 3/14/2024 | C20240314 | EFT Tenant Payment (rev 03 | Jones, Amber | Primary Transaction Declined.  Payment Reversed. | $25.00 | | $25.00 |
| 3/29/2024 | C20240329 | EFT Tenant Payment | Jones, Amber | Application Web Payment using Primary | | ($225.00) | ($200.00) |
| 4/18/2024 | C20240418 | EFT Tenant Payment | Jones, Amber | Web Payment using Primary | | ($3,228.00) | ($3,428.00) |
| 4/19/2024 | | Security Deposit | | | $1,495.00 | | ($1,933.00) |
| 4/19/2024 | | Security Deposit | Jones, Amber | | $1,305.00 | | ($628.00) |
| 4/19/2024 | | Rent Due | Jones, Amber | Prorated for 12 days (4/19/2024-4/30/2024) | $598.00 | | ($30.00) |
| 4/19/2024 | | Resident Water-Sewer | Jones, Amber | Amount for 12 days (4/19/2024 - 4/30/2024) | $30.00 | | $0.00 |
| 4/22/2024 | C20240422 | EFT Tenant Payment | Amber Jones | Web Payment using Primary | | ($3,228.00) | ($3,228.00) |
| 4/23/2024 | C20240418 | NSF Return (rev 04-18) | Jones, Amber | Payment NSFd via Autopost: R01-Insufficient Funds | $3,228.00 | | $0.00 |
| 4/23/2024 | | NSF Charge | Jones, Amber | Created via Autopost ProPay NSF | $25.00 | | $25.00 |
| 4/24/2024 | C20240424 | EFT Tenant Payment | Amber Jones | Web Payment using Primary | | ($3,228.00) | ($3,203.00) |
| 4/24/2024 | | Late Fee | Jones, Amber | Initial Late Fee | $50.00 | | ($3,153.00) |
| 4/24/2024 | C20240422 | NSF Return (rev 04-22) | Amber Jones | Payment NSFd via Autopost:  R01-Insufficient Funds | $3,228.00 | | $75.00 |
| 4/24/2024 | | NSF Charge | Amber Jones | Created via Autopost ProPay NSF | $25.00 | | $100.00 |
| 5/1/2024 | | Rent Due | Jones, Amber | | $1,495.00 | | $1,595.00 |
| 5/1/2024 | | Resident Water-Sewer | Jones, Amber | | $75.00 | | $1,670.00 |
| 5/6/2024 | | Late Fee | Jones, Amber | Initial Late Fee | $50.00 | | $1,720.00 |
| 5/7/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,730.00 |
| 5/8/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,740.00 |
| 5/9/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,750.00 |
| 5/10/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,760.00 |
| 5/11/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,770.00 |
| 5/12/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,780.00 |
| 5/13/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,790.00 |
| 5/14/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,800.00 |
| 5/15/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,810.00 |
| 5/16/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,820.00 |
| 5/17/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,830.00 |

**EXHIBIT**

**D**

tabbies

**\*Hubbard, 1525 Hubbard-RV**
3456 E. 17th St. Suite 210
Ammon, ID  83406

**rooftop** real estate management

Phone: (208) 522-7663

# Lease Statement

**A148**
Page 2 of 3
8/1/2024 09:49

Release 10.03

| Date | Ref | Transaction Name | Payee | Transaction Comments | Charges | Payments | Balance |
|------|-----|-----------------|-------|---------------------|---------|----------|---------|
| 5/18/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,840.00 |
| 5/19/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,850.00 |
| 5/20/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,860.00 |
| 5/21/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,870.00 |
| 5/22/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,880.00 |
| 5/23/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,890.00 |
| 5/24/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,900.00 |
| 5/25/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,910.00 |
| 5/26/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,920.00 |
| 5/27/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,930.00 |
| 5/28/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,940.00 |
| 5/29/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,950.00 |
| 5/30/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,960.00 |
| 5/31/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $1,970.00 |
| 6/1/2024 | | Rent Due | Jones, Amber | | $1,495.00 | | $3,465.00 |
| 6/1/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $3,475.00 |
| 6/1/2024 | | Resident Water-Sewer | Jones, Amber | | $75.00 | | $3,550.00 |
| 6/2/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $3,560.00 |
| 6/3/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $3,570.00 |
| 6/4/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/5/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/6/2024 | | Late Fee | Jones, Amber | Initial + Other Late Fee | | | $3,570.00 |
| 6/7/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/8/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/9/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/10/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/11/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/12/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/13/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/14/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/15/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/16/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/17/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/18/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/19/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/20/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/21/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/22/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/23/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/24/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/25/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/26/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/27/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/28/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 6/29/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |

*Hubbard, 1525 Hubbard-RV
3456 E. 17th St.  Suite 210
Ammon, ID  83406

**rooftop**
real estate
management

Phone: (208) 522-7663

# Lease Statement

**A148**
Page 3 of 3
8/1/2024 09:49

Release 10.03

| Date | Ref | Transaction Name | Payee | Transaction Comments | Charges | Payments | Balance |
|------|-----|------------------|-------|---------------------|---------|----------|---------|
| 6/30/2024 | | Late Fee | Jones, Amber | Late Fee | | | $3,570.00 |
| 7/1/2024 | | Rent Due | Jones, Amber | | $1,495.00 | | $5,065.00 |
| 7/1/2024 | | Late Fee | Jones, Amber | Late Fee | | | $5,065.00 |
| 7/1/2024 | | Resident Water-Sewer | Jones, Amber | | $75.00 | | $5,140.00 |
| 7/2/2024 | | Late Fee | Jones, Amber | Late Fee | | | $5,140.00 |
| 7/3/2024 | | Late Fee | Jones, Amber | Late Fee | | | $5,140.00 |
| 7/4/2024 | | Late Fee | Jones, Amber | Late Fee | | | $5,140.00 |
| 7/5/2024 | | Late Fee | Jones, Amber | Late Fee | | | $5,140.00 |
| 7/6/2024 | | Late Fee | Jones, Amber | Initial + Other Late Fee | $50.00 | | $5,190.00 |
| 7/7/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,200.00 |
| 7/8/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,210.00 |
| 7/9/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,220.00 |
| 7/10/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,230.00 |
| 7/11/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,240.00 |
| 7/12/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,250.00 |
| 7/13/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,260.00 |
| 7/14/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,270.00 |
| 7/15/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,280.00 |
| 7/16/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,290.00 |
| 7/17/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,300.00 |
| 7/18/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,310.00 |
| 7/19/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,320.00 |
| 7/20/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,330.00 |
| 7/21/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,340.00 |
| 7/22/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,350.00 |
| 7/23/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,360.00 |
| 7/24/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,370.00 |
| 7/25/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,380.00 |
| 7/26/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,390.00 |
| 7/27/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,400.00 |
| 7/28/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,410.00 |
| 7/29/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,420.00 |
| 7/30/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,430.00 |
| 7/31/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $5,440.00 |
| 8/1/2024 | | Rent Due | Jones, Amber | | $1,495.00 | | $6,935.00 |
| 8/1/2024 | | Resident Water-Sewer | Jones, Amber | | $75.00 | | $7,010.00 |
| 8/1/2024 | | Late Fee | Jones, Amber | Late Fee | $10.00 | | $7,020.00 |
| | | | | | $16,954.00 | ($9,934.00) | $7,020.00 |